**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff-Appellee,**

v.

**Charles HATMAKER, Defendant-Appellant.**

No. 83–5866.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 10, 1985.

Decided March 1, 1985.

Charles D. Susano, Jr., Bernstein, Susano, Stair & Cohen, Terri Tribble (argued), Knoxville, Tenn., for defendant-appellant.

John Neal, Mary M. Farmer (argued), Knoxville, Tenn., for plaintiff-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This appeal involves a promissory note in the amount of $60,207.00 executed by Charles Hatmaker to the City and County Bank of Campbell County, Tennessee. The FDIC, in its corporate capacity, acquired the note and is now attempting to enforce collection. Hatmaker raised a number of defenses to enforcement, including fraud in the inducement, unjust enrichment, estoppel, laches, and failure of consideration. The magistrate who tried the case granted summary judgment to the FDIC on all of these defenses except failure of consideration, and that issue was submitted to a jury. Rejecting the failure of consideration defense, the jury awarded the FDIC the amount of the note plus interest. Hatmaker now appeals, claiming error in the granting of summary judgment on the fraud in the inducement defense and alleging that there was no substantial evidence to support the jury's verdict.

## I.

The facts of this case, as alleged by appellant Hatmaker,[1] are as follows. In

---

1. We adopt Hatmaker's version of the facts because his major argument is that the magistrate improperly granted summary judgment on his fraud in the inducement defense. In reviewing an award of summary judgment, this Court must utilize the same standard of review that was applied by the trial court and therefore must view the evidence in the light most favorable to the party opposing the summary judgment. *Glenway Industries, Inc. v. Wheelabrator-Frye, Inc.,* 686 F.2d 415, 417 (6th Cir.1982). In reviewing Hatmaker's claim that the evidence was insufficient to support the jury verdict, we

early 1979, Hatmaker borrowed $12,000 from the City and County Bank of Campbell County Tennessee for the purpose of purchasing stock in that bank. In November, 1979, Harry Vestel, vice president of City and County Bank, and Lonnie Hatmaker, Charles Hatmaker's brother, came to Hatmaker's office and asked him to renew his loan or to pay it off. Hatmaker agreed to renew the loan, and he signed a blank note that Mr. Vestel told him would be filled in for $12,000. In March and May of 1980, Hatmaker subsequently renewed this loan by signing blank notes provided by his brother.

■ On June 28, 1980, the Commissioner of Banking of Tennessee determined that the City and County Bank was insolvent. The FDIC was appointed receiver of the bank pursuant to 12 U.S.C. § 1821(e). The FDIC, in its corporate capacity,[2] purchased from itself as receiver certain assets of the bank, including a note signed by Charles Hatmaker on May 30, 1980, in the amount of $60,207.00. It is this note that the FDIC presently is trying to enforce. Hatmaker maintains that the note is unenforceable because it was induced by fraud and because there was a failure of consideration.

## II.

■ The magistrate granted the FDIC summary judgment on Hatmaker's fraud in the inducement defense on two theories. First, he found that under *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), Hatmaker had "lent himself to a scheme or arrangement" which was "likely to mislead" the FDIC. *Id.* at 460, 62 S.Ct. at 681. The magistrate found that Hatmaker was negligent as a matter of law in signing a blank note, and that by this negligence, Hatmaker had lent himself to the type of scheme that the *D'Oench, Duhme* decision was trying to avoid. Because Hatmaker had "lent himself" to such a scheme, the magistrate held that Hatmaker was estopped from raising the fraud in the inducement defense.

The magistrate additionally held that any agreement as to how the blank note was to be filled in was unenforceable against the FDIC under 12 U.S.C. § 1823(e).[3] The alleged agreement to fill in a $12,000 amount on the note was not in writing, and there was no evidence of it in the bank records. The requirements of section 1823(e) were therefore not met.

Here, Hatmaker attacks the magistrate's holding that the *D'Oench, Duhme* doctrine is applicable by claiming that negligence is a question of fact that should have been decided by the jury. Because we find that section 1823(e) is a sufficient basis to grant summary judgment on Hatmaker's fraud in the inducement defense, we need not rule on the merits of the magistrate's *D'Oench, Duhme* holding.

Under section 1823(e), the case law has distinguished between two types of fraud in the inducement in determining whether that section is applicable. *Gunter v. Hutcheson*, 674 F.2d 862, 867 (11th Cir. 1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). One type of fraud in the inducement is an oral promise

will of course employ a much less deferential standard of review.

2. The FDIC's roles as receiver and as corporate insurer are distinct. In its capacity as receiver, the FDIC is obligated to marshall the assets of the failed bank for the benefit of the bank's creditors and shareholders. In its corporate capacity, the FDIC is obligated to insure the failed bank's deposits. *Gilman v. FDIC*, 660 F.2d 688, 690 (6th Cir.1981).

3. Section 1823(e) states:
   No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

by the bank to perform a duty in connection with the execution of a note that the bank does not intend to perform. An example of such fraud in the inducement is a promise by the bank to make future loans to the borrower which the bank does not plan to perform. *See FDIC v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir.1981). Another type of fraud in the inducement is a misrepresentation made by the bank, not involving any promise, to induce a party to execute a promissory note. A good example of such fraud in the inducement is a misrepresentation by the bank that it is in sound financial condition in order to induce a party to borrow money to purchase its stock. *Gunter*, 674 F.2d at 867.

In the second type of fraud in the inducement, no side agreement exists between the parties, and section 1823(e) cannot be applicable. In the first case, however, a side agreement is present to which section 1823 can be applied. Although that side agreement may have been fraudulently induced, it is still a separate agreement into which the parties voluntarily entered.

Hatmaker's fraud in the inducement defense in this case falls in the first category. The essence of Hatmaker's defense is that the City and County Bank, through Harry Vestel, induced him to sign a blank promissory note by promising to fill in a $12,000 amount at a later time. Hatmaker would obviously contend that Vestel made such a promise with the intent of filling in the larger $60,000 amount and that he would never have signed the blank note if he were aware of Vestel's intentions. Although Vestel very well may have had such an intent, the fact remains that Hatmaker did enter into an oral agreement with Vestel to fill in the $12,000 amount.

Viewed in this light, Hatmaker's defense is clearly covered by section 1823(e). The promise by Vestel to enter $12,000 if Hatmaker would sign the note is an agreement to which section 1823(e) is applicable. The agreement would "tend to diminish" the interest of FDIC in the note as the note would be at least partially invalid. The agreement is not in writing, was not exe-cuted, was not approved by the board of the bank, and was not an official record of the bank. It thus is unenforceable against the FDIC in its corporate capacity under the literal language of section 1823(e).

We believe that this result comports with the purpose of section 1823. The purpose is to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note. Such hidden agreements would prevent the FDIC from accurately valuing assets and from making informed decisions on how best to handle a bank's insolvency. The concern is thus with agreements that are not made part of the note. That such an agreement might have been fraudulently induced is immaterial; what is important is that the borrower voluntarily entered into such a side agreement. In this case, Hatmaker admittedly entered into a side agreement to fill in $12,000 on the blank note. That this side agreement may have been breached is inconsequential. We would be allowing Hatmaker to make an "end run" around section 1823(e) if we allowed him to avoid the effect of section 1823(e) by dressing his breach of the oral agreement up in the garb of fraud in the inducement. *See FDIC v. Lattimore Land Corp.*, 656 F.2d at 146 n. 13.

A district court reached the same result in a very similar fact situation in *FDIC v. Powers*, 576 F.Supp. 1167 (N.D.Ill.1983). In that case, the FDIC was attempting to enforce a guarantee against Powers. Powers admitted that he had signed a blank guarantee, but argued that he had not agreed for his guarantee to be used in the particular transaction. Powers claimed that he had an "understanding" with the bank as to how his blank guarantee would be used. The district court held that this defense was barred by section 1823(e) as Powers was relying on a separate, unwritten agreement. *Id.* at 1171.

Because we find Hatmaker's fraud in the inducement defense to be barred by section

1823(e), we affirm the magistrate as to this ground.[4]

## III.

Hatmaker also challenges the sufficiency of evidence supporting the jury's verdict. Specifically, he argues that there was no substantial nor material evidence to support the jury's conclusion that there was not failure of consideration. *See Gold v. National Savings Bank of the City of Albany,* 641 F.2d 430, 434 (6th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981).

With respect to Hatmaker's failure of consideration defense,[5] the magistrate instructed the jury that it had to decide three issues. First, the jury had to decide whether Hatmaker lent himself to a deceptive scheme or arrangement involving the circumstances giving rise to his defense. If Hatmaker did lend himself to such a scheme, he was estopped under the *D'Oench, Duhme* holding from asserting failure of consideration as a defense. Second, the jury had to decide whether there in fact was a failure of consideration. Finally, the jury had to consider whether Hatmaker had adopted or ratified the note even if there was failure of consideration. Because we find there is ample evidence to support a jury verdict on the first issue, we need not consider the other two issues.

The evidence supporting the jury verdict on the first issue included the fact that Hatmaker signed blank notes on three occasions and agreed to allow the bank to fill in the terms later. Because of these executions of blank notes, Harry Vestel or some other person was able to fill in a $60,000 amount on the blank notes and book the loan on the bank's records as $60,000. Vestel was able to accomplish this fraud without detection primarily because he could use Hatmaker's blank note as evidence of the loan. If Hatmaker had not signed the note in blank, Vestel quite probably would not have been able to carry out his scheme and Hatmaker would not now be complaining about failure of consideration. Based on this evidence, a reasonable jury easily could have concluded that Hatmaker was estopped from raising the failure of consideration defense.

Judgment affirmed.

---

**4.** Because we find that Hatmaker's defense is barred by section 1823(e), we need not consider whether as a matter of federal common law, Hatmaker should be prevented from raising fraud in the inducement as a defense. *See Gunter v. Hutchison,* 674 F.2d at 873.

**5.** The magistrate found that the FDIC was not a holder in due course and was therefore subject to the failure of consideration defense. If one accepts the reasoning in *Gunter v. Hutchison,* 674 F.2d at 873, however, the FDIC would for all practical purposes be considered a holder in due course when a purchase and assumption of a failed bank had occurred. The parties have not raised this issue on appeal. The position taken in *Gunter,* however, is one with which we agree.