**FEDERAL DEPOSIT INSURANCE CORPORATION,**
**Plaintiff-Appellee,**

v.

**Bernard E. ARMSTRONG,**
**Defendant-Appellant.**

**Nos. 84–5951, 84–6000.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 29, 1985.
Decided Feb. 27, 1986.

742

R. Franklin Norton (argued), Gary G. Spangler, McCampbell & Young, Knoxville, Tenn., for defendant-appellant.

Boyd W. Venable III (argued), Rex R. Veal, Knoxville, Tenn., for plaintiff-appellee.

Before MARTIN and CONTIE, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

In this yet another collection case by the Federal Deposit Insurance Corporation, we are called upon to reconsider the issues we so recently decided in *FDIC v. Investors Associates X,* 775 F.2d 152 (6th Cir.1985); *FDIC v. Leach,* 772 F.2d 1262 (6th Cir. 1985); *FDIC v. Wood,* 758 F.2d 156 (6th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); and *FDIC v. Hatmaker,* 756 F.2d 34 (6th Cir.1985).

On December 1, 1980, Bernard Armstrong signed a promissory note in the principal amount of $95,000.00, plus interest at one percent over the prime rate of United American Bank, Knoxville, payable to the order of City & County Bank of Anderson County, Tennessee, 180 days later. He signed the note "Bernard E. Armstrong, Trustee" to insure against personal liability and the final paragraph of the note provided:

Payment of this Note is to be made only out of the funds of the Trust held by Bernard E. Armstrong, Trustee, who has signed as maker. In no event is the Trustee to be held individually liable on this instrument and his signature, made as Trustee, shall not be effective to bind him personally.

On the same day, Armstrong entered into a trust agreement, the purpose of which was to hold certain real estate which was the security for the note. Armstrong signed the agreement as trustee; he also was a one-third beneficiary of the trust.

The purpose and nature of these transactions remain uncertain. Armstrong's position is that he entered into these transactions in order to let the United American Bank purchase some property from Earl Perkins, who would not deal with the bank. He did this as a favor to his friend, E.J. Lovell, a bank officer, and he thought United American was the beneficiary of the trust. The FDIC's position is that the transaction had a number of purposes, including the improper prevention of the charge-off of a bad loan earlier made to David and Margaret Lay. The FDIC also alleges that Armstrong must have known that he was a beneficiary of the trust, that $10,326.25 of the $95,000.00 was applied to a personal loan of Armstrong's, and that $16,216.32 remains unaccounted for and the FDIC "presumes was taken in cash." Besides these direct conflicts, a number of other questions remain open, such as the role of H. Eugene Hartsook, the two-thirds beneficiary of the trust.

Armstrong never paid on the note, but from time to time executed other blank promissory notes for principal and interest on the original note. These subsequent notes differed from the first one in that they were standard, preprinted bank forms, whereas the original note was specifically drafted for the transaction. Armstrong testified at his deposition that he signed these notes in blank and relied on bank officials to complete them. The subsequent notes do not indicate any limitation on liability or that Armstrong was signing

as a trustee. The last two of these notes were a note for $95,000.00, plus interest at two percent over the prime rate of United American Bank, Knoxville, dated May 26, 1982, and payable to the order of City & County Bank of Anderson County 180 days later, and a note for $34,776.11, plus interest at twenty-one percent per annum, dated October 25, 1982, and payable to the order of City & County Bank of Roane County, Tennessee, ninety days later. Both of these notes had boxes to check as to whether the note was a new obligation or a renewal. The Anderson County note was marked as a renewal note and explicitly secured by the trust property, but the Roane County note was designated a new obligation and was unsecured.

The two City & County Banks were declared insolvent on May 27, 1983, and the FDIC acquired the two notes in its corporate capacity as the result of purchase and assumption transactions. *See Gunter v. Hutcheson*, 674 F.2d 862, 865–66 (11th Cir.) (description of purchase and assumption transactions), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Subsequently, the FDIC foreclosed on the real estate, but there remained a deficiency for which the present suit was brought. The district court granted summary judgment for the FDIC on both notes. It held that Armstrong's signature on the Anderson County note and the Roane County note without any indication of a limitation on his liability caused him to assume personal liability as a matter of law. Without citing any authority, the court stated:

Although a renewal note is not the creation of a new debt, merely the replacement of the original obligation, it does not follow that a new party cannot obligate himself to pay the original obligation. Nor is it impossible or unreasonable for a person who has made a note in a representative capacity to later obligate himself in an individual capacity. Although defendant contends he did not intend to render himself personally liable on the notes, the notes speak for themselves and they indicate that plaintiff signed in an individual capacity.

On appeal, Armstrong argues that summary judgment for the FDIC was improper because the notes were subject to the exculpatory provision contained in the original note and because he wished to assert the defenses of failure of consideration, fraud in the inducement, and material alteration.

■■■ As a general rule, federal law controls in these collection cases. However, when as here Tennessee law does not interfere with federal objectives and allows a rational resolution of the dispute, it shall be incorporated into the federal law. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 473–74, 62 S.Ct. 676, 686–87, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *FDIC v. Wood,* 758 F.2d at 159.

■■■ We begin our discussion of the issues raised here by first considering the note given by Armstrong to the Roane County Bank for interest on the original loan. We believe the district court's grant of summary judgment concerning the Roane County note was proper, there being no genuine issue as to a material fact. *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Under Tennessee law, unambiguous instruments are interpreted by the courts as they are clearly written as a matter of law. *Petty v. Sloan,* 197 Tenn. 630, 277 S.W.2d 355, 358 (1955). A signature on a note, without any limiting or descriptive language before or after it, clearly shows the assumption of a personal obligation, *Lazarov v. Klyce,* 195 Tenn. 27, 255 S.W.2d 11, 13 (1953), and the subjective intent of the maker is irrelevant. *Malone & Hyde Food Services v. Parson,* 642 S.W.2d 157, 159 (Tenn.Ct.App. 1982). The Roane County note was signed by Armstrong with no limitation on his liability. This note, furthermore, was marked as a new obligation and did not have any indication upon it that the obligation to pay might be restricted in some way. We believe that Armstrong's argument that his liability on the Roane County note is limited by the language of the December 1, 1980, promissory note and the companion trust agreement is without merit.

Concerning the second note, the May 26, 1982, Anderson County note, Armstrong argues that his liability is limited by the trustee language of the December 1, 1980, promissory note and trust agreement. The May 26 note was marked as a renewal and specifically granted a security interest in real estate "more particularly described in Deed of Trust recorded in Book 1937, page 276 of the Register's Office for Knox County, Tennessee." Under Tennessee law, neither of these notations affects the note's negotiability. Tenn.Code Ann. § 47–3–104(1); U.C.C. § 3–104(1). Armstrong signed the note with no indication that he was signing it in any representative capacity. The note does not contain limiting language as was contained in the December 1, 1980, note. On its face, the Anderson County note was clearly and unambiguously an unqualified assumption of personal liability by Armstrong.

■■■ Armstrong has argued that the parties to the May 26, Anderson County note had intended that Armstrong's liability be limited. He claims that after he had executed the blank promissory notes, they were to be completed by the bank with limitations on his liability. As noted earlier, the subjective intent of the maker is irrelevant under Tennessee law. *Malone & Hyde Food Services,* 642 S.W.2d at 159. Furthermore, and equally important, this question is controlled by federal law. Section 2[13](e) of the Federal Deposit Insurance Act states:

**(e) Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the

acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e). In *FDIC v. Hatmaker*, this Court held that under section 1823(e) an unwritten side agreement to complete a blank promissory note after the maker had signed it could not be asserted as a defense in a collection action. 756 F.2d at 36–38. In this case, Armstrong's claimed agreement is clearly excluded from consideration by section 1823(e). As I wrote in *Hatmaker*, an opinion in which Judge Celebrezze concurred, the purpose of this section is

> to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note. Such hidden agreements would prevent the FDIC from accurately valuing assets and from making informed decisions on how best to handle a bank's insolvency. The concern is thus with agreements that are not made part of the note.

*Id.* at 37. The Fifth Circuit stated that "[t]he language of the statute is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC's rights in an asset purchased under authority of § 1823." *FDIC v. Hoover-Morris Enterprises*, 642 F.2d 785, 787 (5th Cir. (Unit B) 1981). Given the clear and unambiguous nature of the May 26 note and that the claimed side agreement is covered by section 1823(e), summary judgment for the FDIC was properly granted.

■ Armstrong further argues that summary judgment on both notes for the FDIC was improper because genuine issues of fact remain concerning his defenses of failure of consideration, fraudulent inducement, and material alteration. In *FDIC v. Wood*, we held that

> [w]hen the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith,

for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

758 F.2d at 161; *Gilman v. FDIC*, 660 F.2d 688, 695 (6th Cir.1981). Conceding that the FDIC otherwise qualifies for the effective status of a holder in due course, Armstrong argues that he is entitled to a jury trial to determine whether the FDIC had actual knowledge of these defenses. In resolving this issue, we need not consider the questions raised by the concurrence in *Leach*, 772 F.2d at 1268, and by the Eleventh Circuit in *FDIC v. Merchants National Bank*, 725 F.2d 634, 640 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984), as to what is meant by actual knowledge by the FDIC. It is sufficient that there is a presumption the FDIC had no knowledge of any defenses, *Wood*, 758 F.2d at 162; furthermore, two officers of the FDIC submitted affidavits that the FDIC had no knowledge of defenses or notice of fraud. Armstrong has produced not even a scintilla of evidence of actual knowledge. Where the maker has not produced admissible evidence setting forth specific facts showing that there is a genuine issue for trial as to the FDIC's knowledge, Fed.R.Civ.P. 56(e), summary judgment for the FDIC is proper. The FDIC therefore takes both of these notes free of the defenses of failure of consideration, fraud in the inducement, and material alteration. *See* Tenn.Code Ann. §§ 47–3–305, 47–3–407(3); U.C.C. §§ 3–305, 3–407(3). Summary judgment for the FDIC on both notes was appropriate.

■ A final issue raised by the defendant is whether summary judgment was appropriate in determining the amount of the judgment. Armstrong alleges that the affidavits computing interest submitted by the FDIC were improper because the affiant had not made the original computations. The calculation of interest is a mechanical task, and a knowledge of the computations is not tied to the person who made them in the same way as more per-

sonal experiences are. Armstrong has not raised any specific question as to the amount of the judgment, so summary disposition was appropriate.

The judgment is affirmed.