**Jack A. PARKER**

v.

**Homer A. WATTS, et al.**

**Civ. A. No. 85–4654.**

United States District Court,
E.D. Louisiana.

Feb. 27, 1987.

David S. Rubin, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, La., for FDIC.

Gary Roedel, Gary, Field, Landry & Dornier, Baton Rouge, La., Walter C. Thompson, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, La., Scott H. Crawford, Preis, Crawford, Scheffy, Mauldin & Ryan, Baton Rouge, La., Malcolm W. Monroe, Deutsch, Kerrigan & Stiles, Arthur L. Ballin, Robert D. Hoffman, Ballin & Hoffman, Gary J. Rouse, Harvey C. Koch & Asso., Roy Ladner, Lemann, O'Hara & Miles, New Orleans, La., for respondent.

### ORDER & REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on motions of the Federal Deposit Insurance Corporation ("FDIC") for summary judgments

filed in various consolidated civil actions,[1] movant having contended the pleadings and affidavits on file show there is no genuine issue as to any material fact and movant is entitled to judgments as a matter of law. The motions are hereby granted in part, for the following reasons.

These consolidated proceedings arise in connection with the failure of First Progressive Bank ("FPB"). In some of the proceedings, investors in FPB allege fraud in connection with their purchases of FPB stock. Other consolidated cases are foreclosures on certain loans obtained from FPB by the investors or on behalf of the investors' businesses, and the investors assert FPB's liability as a set-off to the actions on the loans.

On January 17, 1986, the Commissioner of Financial Institutions for the State of Louisiana (the "Commissioner") declared FPB to be in an unsound condition for continued banking business. Thereafter, the Louisiana governor gave his consent to the Commission or his designee to take possession of FPB and to act as its conservator. The appointment of the Commissioner as conservator was confirmed by order of the Twenty-Fourth Judicial District Court for the Parish of Jefferson, Louisiana. Pursuant to LSA–RS § 6:391,[2]

the conservator appointed the FDIC as receiver and liquidator of FPB, and the FDIC accepted the appointment,[3] at which time the possession of and title to all assets, business and property of FPB passed to and vested in the FDIC as receiver by force of law.[4]

On January 17, 1986, pursuant to another order of the Twenty-Fourth Judicial District Court, a purchase and assumption ("P & A") transaction was approved, and the FDIC in its corporate capacity ("FDIC/Corporate") acquired from the FDIC, in its receivership capacity ("FDIC/Receiver"), certain of the assets of FPB including, but not limited to, the promissory notes which are the subject of these consolidated cases. The books, records and assets of FPB (to the extent not purchased by defendant, Capital Bank) are now in the custody and control of the FDIC.

Prior to its closing, FPB filed several foreclosure actions against FPB investors, and in many of those suits, the investors obtained injunctions against any seizure and sale of property securing the loans. The FDIC has now undertaken prosecution of those actions,[5] some of which seek, at least in part, collection of loans for the purchase of FPB stock, as to which the investors allege fraud.[6] Other foreclosure

---

**1.** Motions for summary judgment are pending in Civil Action Nos. 86–1516, 86–1517, 86–1518, 86–1520, 86–1521, 86–1522, 86–1524, 86–1525, 86–1526, 86–1527, 86–1528, 86–1529, 86–1530, 86–1531, 86–1534, 86–1535, 86–1536, and 86–1537.

**2.** LSA–RS § 6:391 provides in pertinent part:
§ 391. Commencement of receivership; confirmation of receiver.
A. If the conservator shall determine to liquidate the state bank, he shall file a motion for an order from the receivership court to close the bank and commence liquidation thereof. The motion shall name the receiver of the state bank, who shall be the conservator unless some other person is appointed by the commissioner. The receiver shall apply for and shall be entitled to an ex parte order of the receivership court confirming his appointment.
B. The commissioner shall appoint the FDIC receiver if any of the deposits of the state bank are insured by the FDIC. The FDIC shall not be required to post bond.

C. Upon confirmation, the receiver shall be vested with all the powers granted a conservator in Part I of this Subchapter.

**3.** See, e.g., ¶ 5 of the Administrative Proceedings Complaint of P.C. Barrios and others against the FDIC, made a part of the Answer in C.A. No. 86–1516 [hereinafter "Administrative Complaint"].

**4.** See LSA–RS § 6:383, which provides in pertinent part:
§ 383. Transfer of title to bank assets; extension of prescriptive periods.
A. Upon confirmation of a conservator, title to all assets of the bank shall vest in the conservator without the execution of any instruments of conveyance, assignment, transfer, or endorsement.

**5.** The FPB brought its suits in state court. Upon the closure of FPB, the FDIC removed the FPB foreclosure actions from state court under 12 U.S.C. § 1819.

**6.** It is specifically averred by the investors that loans for the purchase of stock were extended to

actions are wholly concerned with loans for purposes unrelated to the purchase of FPB stock, which loans are thus unrelated to the fraud causes of action.

The investors allege they signed their notes because of fraud and duress of FPB or its former officers or employees and that therefore they cannot be held liable to the FDIC. The FDIC asserts fraud and duress are not valid defenses to the FDIC's claims, that summary judgment should be entered on the notes and that the injunctions should be vacated.

The investor/plaintiffs allege the FDIC acquired their notes with actual knowledge of the fraudulent misrepresentations and omissions and without good faith. Specifically, the investor/plaintiffs allege the FDIC had full knowledge of the financial condition of the bank and of the material misstatements made to the plaintiffs by FPB officers and employees.[7] For example, the investor/plaintiffs' submissions in opposition to the FDIC's motions tend to show that in July, 1983, the FDIC conducted an examination of FPB, and as a result, issued an Order of Correction (8–A Order) on January 30, 1984, requiring FPB to take certain action including increasing its capital and reserves by $3.5 million. (See Plaintiffs' Exhibit A.) The FDIC then conducted a follow-up examination in June, 1984, which indicated that an increase of capital of $5 million, rather than $3.5 million, was needed to adequately capitalize FPB. (See comments and conclusions to June, 1984 FDIC Examination Report submitted as Plaintiffs' Exhibit B.) The comments and conclusions of this Examination Report also indicate FPB was rated as a "category 5" bank, noted to be "reserved for institutions with an extremely high immediate or near term probability of failure." (*See id.* at p. 1–a–4.)

Charles Augustine—$111,837.14; Philip Capitano—$200,000.00; E. Ralph Lupin—$13,000.00; Whitney Poirrier—$20,000.00; and Gerald Webre—$14,146.00. It is unclear precisely which civil actions involve those loans.

7. For example, the Barrios Administrative Complaint states, "The FDIC and its employees knew

Pursuant to the requirements of the 8–A Order, FPB submitted the offering materials to the FDIC for its review. There were numerous conference calls between FPB and the FDIC concerning the offering materials. After many discussions and revisions, the offering materials were approved by the FDIC. (See testimony at 8–A Hearing of W.D. Mitchell, FDIC Examiner, pp. 647–48, Plaintiffs' Exhibit C, and of Jerry Paradis, pp. 1041–50, Plaintiffs' Exhibit D.)

The investor/plaintiffs therefore urge the FDIC had actual knowledge of the offering materials' omission of material facts, including the amount needed to adequately capitalize the bank; that the FDIC had recommended and initiated proceedings to cancel FPB's deposit insurance (see letter from FDIC dated September 18, 1984, Plaintiffs' Exhibit E); that the FDIC viewed FPB as teetering on the brink of failure; and that the FDIC knew it would not credit as an increase in capital any loans made by FPB for the purchase of its stock (see Plaintiffs' Exhibit F, page 23 of Kenneth Pickering deposition). As further evidence of the FDIC's knowledge, the investor/plaintiffs submitted a copy of an affidavit by William S. Walter, former vice president and loan officer of FPB, indicating he personally gave a copy of the Jack Parker suit to the FDIC during October, 1985 (Plaintiffs' Exhibit G).

Notwithstanding these allegations and the evidence discussed above, the FDIC urges that for it to fulfill its role in examining open banks and minimizing the adverse effects of a failed bank, the FDIC must stand in a position superior to the closed bank when seeking to collect on the bank's assets. Among the vehicles for protection invoked by the FDIC are: (1) the "*D'Oench* Doctrine" (*see D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941), pursuant to which one who "lends himself" to a scheme or ar-

or should have known that Homer Watts and [FPB] were selling securities to the public for the stated purpose of injecting additional capital into [FPB]," and that such additional capital "should have and … did inure to the benefit of the FDIC." Administrative Complaint, ¶¶ 12–13.

rangement with a bank, misleading or tending to mislead bank examiners or creditors, is estopped to invoke that arrangement to defeat a claim of the FDIC); (2) 12 U.S.C. § 1823(e),[8] which affords the FDIC a complete defense to side agreements or representations between the failed bank and borrowers which would impair the value of the assets purchased; and (3) federal common law and federal banking policy.

In *D'Oench,* the Supreme Court held a borrower cannot defend a claim by the FDIC on grounds that a written loan document, valid on its face, is modified by an undisclosed side agreement. "The crux of the *D'Oench, Duhme* doctrine is the public policy of preventing a secret agreement from being used as a defense to a claim based upon a written instrument by the FDIC." *FDIC v. Hoover-Morris Enterprises,* 642 F.2d 785, 788 n. 4 (5th Cir.1981). Accordingly, the FDIC asserts the *D'Oench* holding applies where the debtor enters into a transaction tending to mislead bank examiners, even in cases where the FDIC has discovered the defense.

The *D'Oench* doctrine was reaffirmed by Congress in 12 U.S.C. § 1823(e), which statute affords the FDIC protection independent of whether the FDIC would qualify as a holder in due course under state law. *See FDIC v. Merchants Nat'l Bank,* 725 F.2d 634, 635 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984) (cited by the FDIC). Section 1823(e) also facilitates examinations of banks by the open bank division of the FDIC by requiring all material matters regarding loans be disclosed in banking records. It also assists the FDIC in purchase and assumption transactions by assuring the FDIC will not risk an impairment of its assets through an agreement not contained in the records of a bank. *FDIC v. Langley,* 792 F.2d 541 (5th Cir.1986), *cert.*

*granted,* —— U.S. ——, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987).

Thus, the FDIC urges it is also immune under 12 U.S.C. § 1823(e) from the type of defenses and claims made in these cases because the defenses assert in effect "agreements" which do not comply with the requirements of the statute. In particular, the FDIC relies upon the Fifth Circuit's decision in *Langley* for the proposition that the FDIC has been held immune from defenses based upon fraud in the inducement. Unless the agreement relied upon by a debtor appears in the bank's records and complies with all of the other requirements of § 1823(e), the FDIC urges it is irrelevant whether the FDIC, as successor in interest to the bank, may have had notice of the agreement, citing *FDIC v. Langley, supra; FDIC v. Merchants Nat'l Bank, supra,* 725 F.2d at 640.

The plaintiff/investors respond that the FDIC acquires a note in a purchase and assumption agreement free from defenses only when it acquires the note for value, in good faith, and without actual knowledge of the fraud at the time it entered into the purchase and assumption agreement, relying upon *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The Fifth Circuit has expressly reserved ruling upon whether it will espouse *Gunter. See FDIC v. Langley, supra,* 792 F.2d at 546 n. 5. Thus, in the absence of controlling authority contrary to *Gunter,* this Court finds *Gunter* persuasive as to the FDIC's attempted foreclosure upon loans obtained for stock purchases. Thus, the issues discussed in *Gunter* and left unresolved by the Fifth Circuit preclude summary judgment in those cases concerning loans used to fund FPB stock purchases.

In *Gunter v. Hutcheson,* the Eleventh Circuit held:

---

**8.** 12 U.S.C. § 1823(e) states in pertinent part: No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing; (2) shall have been executed by the

bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank; (3) shall have been approved by the board of directors of the bank or its loan committee; and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

As a matter of federal common law, the FDIC has a complete defense to state and common law fraud claims on a note acquired by the FDIC in the execution of a purchase and assumption transaction for value, in good faith and without actual knowledge of the fraud at the time the FDIC entered into the purchase and assumption agreement.

674 F.2d at 873. The *Gunter* case involved claims that a bank's officers misrepresented the financial condition of an affiliated bank in connection with a $3 million dollar loan obtained to fund the purchase of the affiliated bank's securities. The FDIC sought to enforce a note representing the loan. However, as the Eleventh Circuit observed, no claim was made that the FDIC had actual knowledge of the fraud claims at the time of the purchase and assumption agreement, and dicta in the opinion strongly suggest actual knowledge of fraud claims will not insulate the FDIC from such claims under federal common law. *See id.* at 872–73.

Perhaps more significantly, the Eleventh Circuit held that the Gunters alleged no agreement subject to 12 U.S.C. § 1823(e), but rather asserted that the entire loan transaction was invalid. *Id.* at 867 (distinguishing Fifth Circuit decisions). Thus, the 12 U.S.C. § 1823(e) "no agreement" statute was not deemed to protect the FDIC. *Gunter* also suggests a loan agreement may be offset by federal securities act claims, federal common law and § 1823(e) immunities notwithstanding.

This Court's reading of *Langley* also reinforces the propriety of denying the motions for summary judgment as to those cases involving loans for the purchase of FPB stock. In *Langley,* the Fifth Circuit held alleged misrepresentations as to certain loan terms and the property purchased with the loan funds could not be asserted against the FDIC. The Fifth Circuit distinguished *Gunter* on grounds that *Gunter* did not involve misrepresentation of loan terms, but rather misrepresentations of the financial status of both the lending bank and the affiliated bank whose stock was to be purchased with the borrowed funds. *See* 792 F.2d at 545–46. Thus, the Fifth

Circuit simply held the *Gunter* analysis did not apply to the case before it. By contrast, *Gunter* is more closely analogous to the cases involving loans for the purchase of FPB stock than is *Langley.*

Nor does *Merchants Nat'l Bank* require summary judgment in all cases before this Court. As the Eleventh Circuit there stated:

Section 1823(e) does not apply to every inquiry concerning an asset. It does not apply if an asset is invalid for fraud....

725 F.2d at 634 (citing *Gunter* ).

However, the foregoing authorities also demonstrate the propriety of granting the FDIC's motions in those foreclosure cases *not* involving loans used to fund stock purchases. This Court may permit the counterclaims of fraud against the FDIC as "recoupments" only to the extent they arise out of the same transactions as the loans. *See FDIC v. Lattimore Land Corp.,* 656 F.2d 139 (5th Cir.1981). Moreover, the investors' allegations of fraud in the inducement do not apply to vitiate any loan transactions independent of the purchase of FPB stock.

It is not established on the record of this Court which cases involve unrelated loans. Accordingly, the Court hereby severs the FDIC foreclosure proceedings for trial purposes and will call upon the FDIC to demonstrate at trial which cases are in fact unrelated to the FPB stock purchases. In any cases in which the FDIC makes this showing, the amounts owed on loans will be determined and judgment entered forthwith on any unpaid balances, plus attorney's fees found to be due.

Summary judgment is accordingly denied only to the extent the investors may establish the FDIC's actual knowledge of and complicity in fraud in the inducement as to any stock purchases. In fact, only if those claims are found to have merit will the Court then have to address definitively the FDIC's immunities under federal statutes and jurisprudence.

This approach is consistent with *FDIC v. Lattimore Land Corp., supra,* wherein the FDIC acquired a note evidencing a loan

from a bankrupt homestead and sued the debtors on the note. The debtors claimed fraud and fraud in the inducement on the loan transaction, contending the homestead misrepresented its financial resources and ability to provide the type of developmental financing the debtors were anticipating when the note was signed.

The Court proceeded to evaluate the debtors' claims, observing:

Litigants generally may not sue the FDIC for money damages under [the Federal Tort Claims Act] [citations omitted]. The law is somewhat different, however, if the FDIC first seeks to assert claims against its adversary. Courts have recognized that a federal agency in bringing suit, although not subject to suit on unrelated claims, [cites omitted], is exposed to claims of recoupment. [cites omitted]. Such claims must arise out of the same transaction or occurrence which is the subject of the agency's suit and may not exceed the claims made by the agency.

*Id.* at 144–43. The Court also stated:

[T]he claims arise out of the same transaction that engendered the FDIC's claims—the FDIC sued on a note and the obligors deny the validity of the note based upon their fraud claims.

*Id.* However, the Fifth Circuit then affirmed summary judgment dismissing the merits of the debtors' state law claims for fraud or fraudulent inducement, finding them insufficient as a matter of state law, and stating

Having reached this decision on a reading of Georgia law, we need not decide whether federal policy would bar the obligors' claims if the state law would have

permitted such claims. In particular, we need not decide whether 12 U.S.C. § 1823(e) or federal common law protects the FDIC from viable recoupment claims based upon fraudulent inducement allegations.

*Id.* at 146. *See also id.* fn. 13. (expressly reserving decision on the *Gunter v. Hutcheson* issues whether fraud in the inducement can be made to "defeat" written "agreement" requirements of 12 U.S.C. § 1823(e)).[9]

The only remaining issues upon which this Court wishes to comment are certain jurisdictional and conflict of laws issues implicit in the FDIC's motion papers.

Perceiving a possible conflict between the jurisdiction of this Court and that of the receiver, the FDIC contends that even if the investor/borrowers are successful in their RICO lawsuits, and even if FPB is held liable to its investors, the investors will only be entitled to file claims against the receivership estate in the amount of the liquidated judgment they eventually obtain. The FDIC points out that the transfer of FPB's deposit liabilities was made pursuant to federal statute, 12 U.S.C. § 1823(c)(2)(A) but the question of whether any contingent liability of FPB to its investors remained in the receivership estate is a matter of state law, *North Miss. Savings & Loan v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985) *cert. denied,* —— U.S. ——, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), and the receivership proceedings are in the nature of an action *in rem. Pufahl v. Parks' Estate,* 299 U.S. 217, 226, 57 S.Ct. 151, 156, 81 L.Ed. 133 (1936). *See Penn General Cas. Co. v. Commonwealth,* 294 U.S. 189, 195, 55 S.Ct. 386, 388, 79 L.Ed. 850 (1935); *Bank of Key*

---

**9.** This distinction between *Langley* and *Gunter* was made in *FDIC v. Hatmaker,* 756 F.2d 34, 36–37 (6th Cir.1985):

Under section 1823(e), the case law has distinguished between two types of fraud in the inducement in determining whether that section is applicable. [citing *Gunter.*] One type of fraud in the inducement is an oral promise by the bank to perform a duty in connection with the execution of a note that the bank does not intend to perform. An example of such fraud in the inducement is a promise by the bank to make future loans to the borrow-

er which the bank does not plan to perform. [citing *Lattimore Land Corp.*] Another type of fraud in the inducement is a misrepresentation made by the bank, not involving any promise, to induce a party to execute a promissory note. A good example of such fraud in the inducement is a misrepresentation by the bank that it is in sound financial condition in order to induce a party to borrow money to purchase its stock. *Gunter,* 674 F.2d at 867. The recent Fifth Circuit case *T.J. Melton III & Assoc., Inc. v. FDIC,* 808 F.2d 1521 (5th Cir.1986) may be distinguished on the same bases.

*Biscayne v. Hankins*, 42 F.2d 209, 210 (5th Cir.1930). Thus, state courts or state officials have exclusive control of the *res* of a failed bank's estate.

The Court agrees with this general proposition, but it believes any ruling on the enforceability of FPB's contingent liabilities to the inventor/borrowers is unnecessary at this time. For the present, 12 U.S.C. § 1819, the federal securities laws and RICO confer subject matter jurisdiction over these cases, with pendent jurisdiction existing as to any remaining state law claims.

The Court is also mindful of the FDIC's caveat that the rights of the FDIC and the liabilities of its obligors involve federal questions to be resolved under federal law. *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986); *D'Oench, Duhme & Co. v. FDIC*, supra. Thus, the Court will not accept the FDIC's characterization of the investors' defenses to stock related loans as an inadequate state law plea of compensation, effectively limiting the investors' federal securities claims.

Accordingly, the FDIC's motions for summary judgment are hereby GRANTED in part and DENIED in part. Trial of the foreclosures on nonstock loans has been scheduled for June 4, 1987.

Trial of the FDIC's remaining foreclosure actions as to the stock related loans will be delayed until trial of the securities and RICO claims. This latter trial date has not yet been scheduled, and the delay may cause undue prejudice to the FDIC should any reviewing Court determine that this Court's application of *Gunter v. Hutcheson* was erroneous. Thus, the question whether the FDIC is immune from the investors' fraud, RICO and securities claims raised in connection with the loans for purchase of stock is hereby certified for immediate appeal under 28 U.S.C. § 1292(b), the Court being of the opinion that this question presents a controlling question of law as to which there is substantial ground for difference of opinion and that its resolution would materially advance the ultimate termination of these cases. However, this certification shall in no way affect the trial schedule imposed as to the other FDIC foreclosure proceedings, over which this Court retains jurisdiction.