781 F.2d 1101
 4 Fed.R.Serv.3d 369
 FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate
capacity as insurer of First National Bank of
Midland, Plaintiff-Appellant Cross-Appellee,
v.
John B. CASTLE, Nolan H. Brunson, Jr., and Kenneth R. Marsh,
Defendants-Appellees Cross-Appellants.
 No. 84-1972.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 3, 1986.
 
 Jenkens & Gilchrist, T. Ray Guy, Karl G. Dial, Dallas, Tex., James P. Boldrick, Midland, Tex., for plaintiff-appellant, cross-appellee.
 Robert W. Blair, Fort Worth, Tex., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Western District of Texas.
 Before GEE and JOHNSON, Circuit Judges, and MENTZ, Jr.* , District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This appeal arises out of a suit brought by the Federal Deposit Insurance Corporation ("FDIC") as receiver for First National Bank of Midland ("FNB") to recover on guaranties signed by defendants John B. Castle, Nolan H. Brunson, Jr., and Kenneth R. Marsh. The guaranties, as completed, reflected that the defendants ensured payment for the full amount of indebtedness for U.S. Drilling Company and its successor, Rigco, Inc. Defendants, however, contended at trial that they had agreed orally with FNB president Charles D. Fraser to guarantee collectively only twenty-five percent of U.S. Drilling's (and, subsequently, Rigco's) indebtedness, to FNB. Based on responses to special interrogatories, the jury held for the defendants. The district court granted judgment that the defendants collectively should pay twenty-five percent of Rigco's outstanding indebtedness. Both the FDIC and the defendants appeal. This Court reverses and renders judgment for the FDIC.
 
 I. BACKGROUND
 
 2
 U.S. Drilling Company ("U.S. Drilling") was formed in January 1981 to engage in contract oil and gas drilling. Defendants John B. Castle, Noland H. Brunson, Jr., and Kenneth R. Marsh were the sole owners of U.S. Drilling. On March 31, 1981, U.S. Drilling executed a promissory note in which it borrowed $5.5 million from FNB. As part of the original loan agreement, the three defendant-owners (i.e., Castle, Brunson, and Marsh) were each to sign a guaranty. According to their own testimony, the defendants Castle, Brunson, and Marsh reached an accord with Charles Fraser, the FNB's president and chief executive officer, to collectively guarantee only twenty-five percent of U.S. Drilling's indebtedness to the FNB. Prior to leaving the FNB on the occasion in question, Castle, Brunson, and Marsh testified that they each signed forms of personal guaranty with the amount to be guaranteed left blank. The three defendants further testified that, unknown to them until after the instant suit was filed, the FNB completed the guaranty agreements to reflect that the defendants had each guaranteed the entire indebtedness of U.S. Drilling to the FNB (i.e., $5.5 million). Former FNB president Fraser countered the defendants' testimony and testified that the defendants had agreed to guarantee all of U.S. Drilling's indebtedness, and that the completed forms of guaranty therefore reflected the parties' agreement.
 
 
 3
 In mid-1981, U.S. Drilling changed its name to Rigco. On March 12, 1982, the three defendants again met with Fraser and were asked to sign a new promissory note and forms of guaranty for Rigco. Defendant Brunson executed the promissory note on behalf of Rigco in the original principal amount of $5.48 million. Defendants Castle, Brunson, and Marsh executed additional forms of guaranty in favor of FNB. The percentage to be guaranteed by the defendants was not discussed on this occasion, but the defendants testified that they assumed that the original agreement with Fraser of a collective twenty-five percent guaranty was still in effect.
 
 
 4
 In March or April of 1982, Rigco decided to cease active drilling operations. On November 8, 1982, the FNB made demand upon Rigco and the original guarantors for payment on the promissory note. On the same day, Rigco filed for protection under Chapter 11 of the United States Bankruptcy Code.
 
 
 5
 On January 19, 1983, suit was filed in Texas state court by the FNB to enforce the guaranty agreements. On April 8, 1983, in connection with the Rigco Chapter 11 proceedings, the FNB and Rigco entered into a settlement agreement under the terms of which Rigco's liability was reduced to $2.75 million, with Castle, Brunson, and Marsh receiving the benefit of this reduction against the liability, if any, on their personal guaranties.
 
 
 6
 On October 14, 1983, FNB was declared insolvent by the Comptroller of the Currency. The FDIC was appointed as receiver. In the FNB's files, the FDIC found the guaranties executed by the defendants Castle, Brunson, and Marsh. These guaranties on their face indicated that the three defendants had guaranteed the full indebtedness of U.S. Drilling and its successor in interest, Rigco. The FDIC, as receiver of FNB, sold to the FDIC, in its corporate capacity, the Rigco loan and all documents concerning such loan, including the guaranties of defendants Castle, Brunson, and Marsh. The FDIC was substituted as the party plaintiff in the state court proceedings; the state court suit was then removed to the United States District Court for the Western District of Texas.
 
 
 7
 The case was tried to a jury on September 6 and 7, 1984. The central issue at trial was whether FNB President Fraser and the three defendants had indeed agreed to limit the defendants' guaranty to twenty-five percent. In response to special interrogatories the jury found that the oral agreement between the defendants and Fraser had been to collectively guarantee only twenty-five percent of the indebtedness. Judgment was thereafter entered that the defendants pay twenty-five percent of Rigco's remaining indebtedness to the FDIC (i.e., one-fourth of $2.75 million or $687,500.00).
 
 
 8
 A series of post-judgment motions followed. The most significant of these motions was that filed by the FDIC which urged reconsideration and relief from the judgment, pursuant to Fed.R.Civ.P. 60(b). The FDIC asserted such relief was warranted on the basis that protections accorded the FDIC by federal statutory and common law prohibited the defendants from asserting an unwritten agreement between the bank and the defendants against the FDIC to vary the written terms of the guaranties. See 12 U.S.C. Sec. 1823(e). While the FDIC had urged such protections in its pleadings and listed the application of section 1823(e) as a contested issue of law in the pre-trial order in the district court, the FDIC's post-judgment motion marked the first time that it had pressed its contention before the trial court. On November 12, 1984, this motion was denied, and the appeal to this Court followed.[1]
 
 II. THE MERITS
 
 9
 The central issue on this appeal is whether this Court may consider the application of the FDIC's federal statutory and common law protections to a guarantor's defense that forms executed in blank were completed in an unauthorized manner. The FDIC admits that it did not pursue the question of the applicability of its federal statutory and common law protections before the trial court. The FDIC contends, however, that either the district court in a post-judgment motion or this Court on appeal should consider the applicability of the FDIC's federal statutory or common law protections since only a question of law is involved and since recent authority clearly establishes that these protections apply to the instant case. The defendants do not contest that these protections may well have applied if they had been timely asserted; instead, the defendants argue that the failure to timely pursue such theories bars their consideration. We first examine the procedural context.
 
 A. The Procedural Context
 
 10
 The FDIC asserts that the district court abused its discretion in denying its Rule 60(b) motion for reconsideration of the judgment in light of the FDIC's statutory and common law protections. Alternatively, the FDIC contends that the applicability of its protections is a pure question of law which may be considered by this Court for the first time on appeal.
 
 
 11
 Fed.R.Civ.P. 60(b) provides that a district court "may relieve a party ... from a final judgment ... for ... (1) mistake, inadvertence, surprise, or excusable neglect, ... (6) any other reason justifying relief from the operation of the judgment." This Court has noted, "The law of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law." Fackelman v. Bell, 564 F.2d 734, 736 (5th Cir.1977). Exercise of the trial court's discretion requires "a delicate adjustment between the desirability of finality and the prevention of injustice." In re Casco Chemical Co., 335 F.2d 645, 651 (5th Cir.1964). While finality of judgments is an important consideration, the goal of finality "must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir.1981). "In this light, it is often stated that the rule should be liberally construed in order to do substantial justice." Id. To guide the district court's consideration of a Rule 60(b) motion, the Court in Seven Elves prescribed certain factors for consideration:
 
 
 12
 (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether--if the judgment was rendered after a trial on the merits--the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.
 
 
 13
 Seven Elves, 635 F.2d at 402. The defendants, pointing out that the FDIC had numerous opportunities to present its statutory and common law defenses but failed to do so, argue that the FDIC had "a fair opportunity to present [its] claim or defense."
 
 
 14
 The failure to present a theory of recovery or defense to the district court involves waste of judicial and private resources and should be strongly discouraged. In many cases, the failure to pursue a point before the trial court inevitably leads to the conclusion that the issue will not receive judicial consideration. However, this Court has noted there are exceptions to this general rule. See Texas v. United States, 730 F.2d 339, 358 n. 35 (5th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984) (general rule subject to exceptions on case-by-case basis). Thus, this Court has noted that certain circumstances exist in which a court should examine its judgment even though the Rule 60(b) movant negligently failed to raise the theory at trial. In Meadows v. Cohen, 409 F.2d 750 (5th Cir.1969), for instance, the plaintiff sought retroactive social security benefits. The district court awarded benefits which were clearly in excess of those allowed by 42 U.S.C. Sec. 423(b). The Government, however, asserted the statute for the first time in a Rule 60(b) motion. The district court denied the motion, and the claimant sought to defend the district court's determination on the basis that the Government waived reliance on section 423(b). This Court reversed:
 
 
 15
 While this motion was not filed as promptly as it might have been, the error was brought to the Court's attention before any party had detrimentally relied on the judgment or sustained any loss by reason of it or through the intervention of third parties. Under these circumstances and the compelling policies of basic fairness and equity reflected by 60(b), the [District] Court had a duty to conform its judgment to the law as enacted by Congress.
 
 
 16
 Id. at 753. Thus, the clear applicability of a federal statute brought to the trial court's attention in a post-judgment motion may lead to a duty to consider the statute.
 
 
 17
 Moreover, in the instant case, other factors suggested in Seven Elves lean toward consideration of the FDIC's statutory and common law protections. There is no contention here that the FDIC seeks to use "the Rule 60(b) motion ... as a substitute for appeal." Seven Elves, 635 F.2d at 402 (factor (2)). Rather, the motion was not only "made within a reasonable time" but also was made within the time for filing a notice of appeal. See Seven Elves, at 402 (factor (4)); McDowell v. Celebrezze, 310 F.2d 43 (5th Cir.1962) (Rule 60(b) motion may be granted when made within time for appeal). Further, as in Meadows, the party raised its statutory and common law protections "before any party [had sufficient time to] detrimentally rel[y] on the judgment." Meadows, 409 F.2d at 753. Thus, we detect no "intervening equities that would make it inequitable to grant relief." Seven Elves, 635 F.2d at 402 (factor (7)). Finally, and as detailed infra in Section II.B, Rule 60(b) relief was appropriate in that application of the FDIC's federal statutory and common law protections is meritorious, requires no further factual development, and is clear on the face of this record. See Compton v. Alton Steamship Co., 608 F.2d 96, 104 (4th Cir.1979); Chick Kam Choo v. Exxon Corp., 699 F.2d 693, 695 (5th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 103 (1983) (applying Compton favorably).
 
 
 18
 Similarly, this Court has noted that it is appropriate to consider and accept contentions not raised at any point during the trial proceedings where there is only a question of law involved and "a refusal to consider it would result in a miscarriage of justice." Martinez v. Mathews, 544 F.2d 1233, 1237 (5th Cir.1976). Courts have reached such contentions in numerous contexts. See Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 286 (5th Cir.1975) (whether closing arguments of counsel were grossly improper); Evans v. Triple R Welding & Oil Field Maintenance Corp., 472 F.2d 713, 716 (5th Cir.1973) (whether one party was entitled to indemnity from another party under theory different from that asserted to trial court); McCrea v. Harris County Houston Ship Channel Navigation District, 423 F.2d 605, 610 (5th Cir.), cert. denied, 400 U.S. 927, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970) (whether interest should be awarded on judgment); Empire Life Insurance Co. v. Valdak Corp., 468 F.2d 330, 333-34 (5th Cir.1972) (whether U.C.C. applied to security agreement drafted before effective date of U.C.C.). Considering such contentions even though raised late in the proceedings is particularly appropriate where application of the law is clear. See Meadows, 409 F.2d at 753. See also Fehlhaber v. Fehlhaber, 681 F.2d 1015 (5th Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983) (issue not previously raised considered only if issue presented is purely legal and error is "so obvious that the failure to consider it would result in a miscarriage of justice").
 
 
 19
 This Court's examination of the relevant statute, 12 U.S.C. Sec. 1823(e), and the federal common law, see infra at II.B, reveals that the applicability of such protections is clear in the instant case. Thus we conclude that, under the instant circumstances, this Court should consider their application whether they are considered as review of the district court's denial of Rule 60(b) relief or whether they are considered as review by this Court of issues first raised on appeal. We now turn to that examination.
 
 
 20
 B. FDIC's Statutory and Common Law Protections
 
 
 21
 Courts have noted the importance of the FDIC in stablizing and protecting the nation's banking system. See, e.g., Gunter v. Hutcheson, 674 F.2d 862, 869 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Thus, the Supreme Court, as a matter of federal common law, had determined that a maker of a promissory note is estopped from asserting a defense against the FDIC that the maker and the failed bank agreed not to call the note for repayment when the note continued to appear as a valid note on the bank's records. D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Following the Supreme Court's creation of federal common law protections for the FDIC against secret side agreements in D'Oemch, Duhme, Congress itself recognized the importance of such protections. Accordingly, 12 U.S.C. Sec. 1823(e) provides:
 
 
 22
 No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset required by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.
 
 
 23
 In the instant case, it is undisputable that the agreement between FNB president Fraser and the defendants was neither in writing nor an official record of the bank. Thus, the "agreement" fails to meet the statute's requirements if it is an agreement falling within the provisions of the statute. The FDIC asserts that it is such an agreement since the oral agreement "tends to diminish" the FDIC's interest in the Rigco guaranties that it acquired as a result of the FNB's failure.
 
 
 24
 This Court has recently applied section 1823(e) in several contexts. In Black v. FDIC, 640 F.2d 699 (5th Cir.), cert. denied, 454 U.S. 838, 102 S.Ct. 143, 70 L.Ed.2d 119 (1981), this Court held that the obligors could not assert against the FDIC unwritten understandings to vary the terms of a loan agreement. In FDIC v. Hoover-Morris Enterprises, 642 F.2d 785 (5th Cir.1981), this Court held that the makers of a promissory note were barred by section 1823(e) from asserting against the FDIC an unwritten agreement that the lender would not seek a deficiency against the borrowers. Finally, in both Chatham Ventures, Inc. v. FDIC, 651 F.2d 355 (5th Cir.1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982), and FDIC v. Lattimore Land Corp., 656 F.2d 139 (5th Cir.1981), this Court barred assertions against the FDIC that the lender had agreed to provide the borrowers further financing.
 
 
 25
 While this Court has not applied section 1823(e) to an oral agreement to fill in blanks on a document executed in blank, we hold that section 1823(e) applies to such agreements. "The common thread running through these cases [applying section 1823(e) to bar a defense] has been the assertion by the obligor that an oral side agreement with the bank controlled the rights of the parties." Gunter, 674 F.2d 867 (discussing Fifth Circuit precedent). In the instant case, the defendants assert that the alleged oral agreement takes precedence over the documents reflected in the FNB records. Thus, applying section 1823(e) to bar the defendants' assertion of the oral agreement to limit their liability flows directly from this Court's prior interpretation of section 1823(e).
 
 
 26
 Moreover, this Court's conclusion applying section 1823(e) to the instant case finds clear support from the recent decisions of two other circuits. In FDIC v. Hatmaker, 756 F.2d 34 (6th Cir.1985), the Sixth Circuit has held that section 1823(e) bars an "in blank" defense. In Hatmaker, the defendant Charles Hatmaker executed a note in blank. Hatmaker asserted that the bank had told him the amount of the note's indebtedness would be filled in at $12,000.00. However, the note as completed reflected an indebtedness of $60,207.00. The Sixth Circuit upheld the district court's judgment in favor of the FDIC for the full amount of the note and, particularly, upheld the district court's granting of partial summary judgment on the basis of section 1823(e):
 
 
 27
 Viewed in this light, Hatmaker's defense is clearly covered by section 1823(e). The promise by Vestel to enter $12,000 if Hatmaker would sign the note is an agreement to which section 1823(e) is applicable. The agreement would "tend to diminish" the interest of FDIC in the note as the note would be at least partially invalid. The agreement is not in writing, was not executed, was not approved by the board of the bank, and was not an official record of the bank. It thus is unenforceable against the FDIC in its corporate capacity under the literal language of section 1823(e).
 
 
 28
 Id. at 37. Citing precedent by this Court, the Hatmaker court noted the important policy goals served by applying section 1823(e):
 
 
 29
 We believe that this result comports with the purpose of section 1823. The purpose is to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note. Such hidden agreements would prevent the FDIC from accurately valuing assets and from making informed decisions on how best to handle a bank's insolvency. The concern is thus with agreements that are not made part of the note. That such an agreement might have been fraudulently induced is immaterial; what is important is that the borrower voluntarily entered into such a side agreement. In this case, Hatmaker admittedly entered into a side agreement to fill in $12,000 on the blank note. That this side agreement may have been breached is inconsequential. We would be allowing Hatmaker to make an "end run" around section 1823(e) if we allowed him to avoid the effect of section 1823(e) by dressing his breach of the oral agreement up in the garb of fraud in the inducement. See FDIC v. Lattimore Land Corp., 656 F.2d at 146 n. 13.
 
 
 30
 Id. See also FDIC v. Investors Associates X., Ltd., 775 F.2d 152 (6th Cir.1985).
 
 
 31
 Further, the Seventh Circuit has recently affirmed a district court opinion that concurs with the Sixth Circuit's analysis in Hatmaker.[2] In FDIC v. Powers, 576 F.Supp. 1167 (N.D.Ill.1983), aff'd., 753 F.2d 1076 (7th Cir.1984), the defendant Powers signed guaranty forms in blank with the Drovers National Bank of Chicago. After the bank was declared insolvent, the FDIC, in its corporate capacity, obtained the bank's assets and sued on the guaranty. The defendant Powers argued that he signed the guaranty only in blank and that he did not intend to guarantee the obligation in question. The district court granted summary judgment in favor of the FDIC:
 
 
 32
 The court accepts the reasoning of these cases, and holds Powers' asserted defense to be barred by Sec. 1823(e). The FDIC sues Powers on a facially sufficient written guarantee, and he wishes to defend on the basis of informal, unwritten arrangements and understandings between him and Drovers officials. These arrangements and understandings may have been convenient for the parties thereto, but they were not reflected on Drovers' records. Powers wishes ultimately to prove that no guarantee contract ever existed, but that does not change the fact that he is asserting the type of private agreement that is invalidated by Sec. 1823(e).
 
 Id. at 1171 (footnote omitted).[3]
 
 33
 Likewise, the federal district court in FDIC v. Webb, 464 F.Supp. 520 (E.D.Tenn.1978), rejected the obligor's assertion that the notes had been executed in blank and completed in an unauthorized manner. The court stated, "Since the FDIC is not bound by prior oral agreements, breach of those agreements will not affect the [FDIC's] right to recover the amount appearing on the face of the note." Id. at 525.
 
 
 34
 We conclude that section 1823(e) clearly precludes the defendant-guarantors' assertion that the guaranty forms were not completed according to the defendants' oral agreement with FNB president Fraser. Thus, well-established federal law and policy commands that the FDIC should recover the full amount of the guaranty reflected on the face of the guaranty instruments.[4]
 
 III. CONCLUSION
 
 35
 In sum, the Court holds that the FDIC's argument concerning its statutory and common law protections should be considered on this appeal and that 12 U.S.C. Sec. 1823(e) bars the defendants' defense that the guaranties were not executed in accordance with the oral agreement. The judgment of the district court is reversed and rendered, holding the defendants liable, jointly and severally, for $2,750,000, plus interest and attorney's fees as reflected in the district court's judgment.
 
 REVERSED AND RENDERED
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 The final judgment in the instant case was entered on September 14, 1984, but the time for filing a notice of appeal did not begin to run until the district court denied the FDIC motion for a new trial on October 3. See Fed.R.App.P. 4(a)(4). The FDIC, as a federal agency, is allowed 60 days in which to file a notice of appeal. See Fed.R.App.P. 4(a)(1). Thus, both the FDIC's Rule 60(b) motion (filed on October 23) and its notice of appeal (filed on November 19) were filed within the notice of appeal period
 
 
 [2]
 We note that the decisions in Hatmaker and Powers were decided by the court of appeals well after the trial of the instant case. Such intervening precedent is another consideration weighing in favor of considering the FDIC's assertions on this appeal. See Equitable Life Assurance Society v. MacGill, 551 F.2d 978, 984-85 (5th Cir.1977)
 
 
 [3]
 The court also rejected Powers' defense on the basis of federal common law under the D'Oench, Duhme doctrine. While this Court's analysis of Sec. 1823(e) renders a full analysis of D'Oench, Duhme unnecessary, we note the important policy considerations discussed by the Powers court:
 The goal of the D'Oench doctrine, like that of Sec. 1823(e), is to allow the FDIC to rely on bank records in appraising the worth and collectibility of the bank's assets. D'Oench has been applied to bar defenses apparently not attributable to the conduct of the defendants. See Gunter, 674 F.2d at 868-73 (fraud in the inducement). It is all the more appropriate to apply D'Oench to bar defenses arising from irregularities to which the defendant intentionally has contributed. Executing guarantees in blank is not good practice.
 Powers, 576 F.Supp. at 1171.
 
 
 [4]
 The FDIC also asserts that the jury instructions were improper in that the instructions and verdict form properly placed the burden of proof upon the FDIC. While the result reached in this opinion relieves the Court of reaching this issue, we note that the verdict form improperly placed the burden on the FDIC with respect to Special Interrogatories Nos. 2 and 8. If called to reach a result, we might conclude that this error was harmless. This error, however, reinforces the Court's decision that the FDIC's assertion concerning Sec. 1823(e) should be considered on this appeal