In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2585

NEREIDA MENDEZ,

*Plaintiff-Appellant,*

*v.*

REPUBLIC BANK,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CV 4159—**Joan Humphrey Lefkow**, *Judge.*

ARGUED APRIL 3, 2013—DECIDED JULY 25, 2013

Before POSNER, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Under Illinois law, a judgment creditor may, without any action by a court, require a third party holding property of a judgment debtor to freeze the property until a court determines whether the creditor has a valid claim on the property. To do so the judgment debtor serves the third party with a citation to discover assets. If the third party releases the property without a court order giving permission to do so, the

third party may be liable to the judgment creditor for any property of the debtor that was released, up to the value of the underlying judgment. 735 Ill. Comp. Stat. 5/2-1402(f)(1).

The issue on the merits in this appeal is whether Republic Bank is liable to plaintiff Nereida Mendez for unfreezing two bank accounts that Mendez had required Republic Bank to freeze pursuant to the Illinois law. Republic Bank argues that it unfroze the accounts in reliance upon an order by the United States District Court for the Northern District of Illinois. Mendez maintains that the court's order did not unfreeze the specific accounts in question. After some unusual procedural twists, the district court eventually ruled in favor of Republic Bank. Mendez appeals. We affirm, concluding that Republic Bank is not liable to Mendez for releasing the funds since the most reasonable reading of the district court order unfroze the accounts in question.

Before we address the merits in detail, though, we must first address the procedural twists involving Federal Rule of Civil Procedure 60(b) and the statute authorizing magistrate judges to provide written reports and recommendations to district judges. Mendez is appealing the district judge's second ruling on her motion. Initially the district judge ruled for Mendez, and Republic Bank filed a timely appeal. Three days after Republic Bank appealed, the district judge realized that she had overlooked a magistrate judge's report and recommendation on Mendez's motion. After reviewing the report and recommendation, the district judge con-

cluded that she had reached the wrong decision on the merits. The district judge informed the parties of this and invited Republic Bank to file a Rule 60(b) motion for relief from judgment and a motion with this court to remand the pending appeal to the district court. The motions were filed, we remanded the appeal, and the district judge then granted the Rule 60(b) motion and denied Mendez's motion for judgment against Republic Bank. Mendez argues that this was an inappropriate use of Rule 60(b) because such relief is not available to remedy mistakes that may be corrected on appeal. We conclude that in these circumstances, where a losing party has filed a timely appeal, Rule 60(b) may be used at the district court's discretion to correct errors that would also be correctable on appeal.

I. *Factual and Procedural Background*

In 2007, a jury found that Nereida Mendez suffered multiple counts of unlawful abuse at the hands of her employer and awarded her damages of approximately $800,000, which the district court reduced to $387,931.25 to comply with Title VII's damage caps. See *Mendez v. Perla Dental*, No. 04C4159, 2008 WL 821882 (N.D. Ill. Mar. 26, 2008), *aff'd in part*, 646 F.3d 420 (7th Cir. 2011).[1]

---

[1] As set out in an earlier opinion on the merits of Mendez's claims:

> The evidence at trial demonstrated that the defendants maintained an environment of ongoing verbal and physical sexual harassment of female employees, refused repeatedly
>
> (continued...)

Mendez then began a judicial odyssey to collect her judgment. She served over fifty citations to discover assets on the employer defendants and dozens of banks where she believed the employer defendants had deposited assets. She also successfully fought the employer defendants' fraudulent attempt to escape the judgment by declaring bankruptcy. See *In re Dental Profile, Inc.*, 446 B.R. 885, 903-06 (Bankr. N.D. Ill. 2011) (finding employer defendant fraudulently filed bankruptcy petition

---

(...continued)

> to change that environment, and ultimately terminated Mendez for her complaints of mistreatment. Mendez's complaints took a variety of forms. She complained of sexual harassment to the office manager, the assistant office manager, and the general manager, but those complaints resulted in no changes in the environment, and in fact caused her to be criticized and ridiculed in front of the other employees. In addition, she complained to the police when one incident resulted in physical injury to her. In that incident, Dr. Dajani pushed her to the floor after she refused his suggestion that she date Dr. Ahmed. She injured her back in that fall and received treatment in the emergency room. She then filed a police report concerning that incident. That action caused an escalation in the harassment. Mendez introduced testimony that when she gave the defendants the bill from her hospital visit, the owner stated "[w]ho do you think you are bringing the police into our office," and then told her she was fired and had her escorted from the building.

*Mendez v. Perla Dental*, 646 F.3d 420, 421 (7th Cir. 2011).

to avoid judgment and imposing sanctions). For her efforts, she has recovered to date only $99,519.97 on her judgment. This appeal is the latest episode in this quest.

On October 11, 2010, Mendez served Republic Bank by certified mail with a citation to discover assets. Republic Bank's compliance with this citation is the focus of this appeal. The citation required Republic Bank to freeze accounts held under the names of twenty-two different entities that Mendez believed contained assets belonging to her former employers. Upon receiving the citation, Republic Bank froze all of the listed accounts.

On October 14, 2010, several of the entities that owned the frozen accounts intervened and moved to quash the citation to discover assets to unfreeze their accounts. The interveners owned only a subset of the accounts frozen pursuant to Mendez's citation to Republic Bank and another citation that Mendez had served earlier on MB Financial. Of note, the judgment debtors themselves, Dentists, P.C. and Dental Profile, Ltd., did not move to have their accounts unfrozen, and neither the judgment debtors nor Republic Bank were parties to the motion. The interveners argued that their accounts should be unfrozen because the accounts did not contain funds belonging to the judgment debtors. The next day Judge Der-Yeghiayan heard the motion and issued the following order (the "October 15 Order"), the interpretation of which is the central issue in this appeal:

> The Court hereby orders that, until further order of this Court, the only accounts that are to remain frozen pursuant to the citation issued by Plaintiff Nereida Mendez against Defendants Dentists, P.C.;

Perla Dental, and Dental Profile/Dental Profile, Ltd. are as follows: AYA Dental Account that contains a balance of $72,171.29 and the two Dental Profile Ltd accounts that each contain a balance of $0.00 at MB Financial Bank (as represented by counsel for MB Financial Bank as to the amounts currently in the above-referenced accounts). The Elgin Dental Profile, Ltd., account and the Aldairi/Husgus account at MB Financial Bank are hereby ordered to be unfrozen until further order of this Court. In addition, the accounts held under the names AYA Dental and AYA Dental, Ltd at Republic Bank of Chicago will remain frozen until further order of this Court. Emergency motion to quash citations as to all other accounts at MB Financial Bank and Republic Bank of Chicago that are not identified above [312] is granted. MB Financial Bank is ordered to respond within 14 days to the discovery request by the above Plaintiff with regard to the Aldairi/Husgus account at MB Financial Bank.

According to Republic Bank, the October 15 Order unambiguously required it to unfreeze all accounts frozen pursuant to Mendez's citation, except the AYA Dental and AYA Dental, Ltd. accounts that were specifically mentioned as remaining frozen. Accordingly, Republic Bank unfroze all the other accounts. The accounts Republic Bank unfroze included two accounts held by Dentists, P.C. and Dental Profile, Ltd., neither of which was a party to the motion to quash. At the hearing on the motion to quash, it was never argued that those accounts should be unfrozen. Nevertheless, Republic Bank also unfroze

these accounts pursuant to its reading of the October 15 Order. Over the next four months, the judgment debtors transferred approximately $716,886.05 out of these accounts, more than enough to have covered the unpaid judgment in favor of Mendez.

In February 2011, Mendez discovered that Republic Bank had unfrozen the Dentists, P.C. and Dental Profile, Ltd. accounts. Mendez emailed Republic Bank requesting that it refreeze the accounts pursuant to the terms of the citation. Republic Bank did not freeze the accounts in response. On March 2, 2011, Mendez filed an emergency motion to freeze the accounts, which the district court granted on March 3, 2011. During the March 3 hearing, Judge Der-Yeghiayan did not understand why Mendez was trying to freeze the Dentists, P.C. and Dental Profile, Ltd. accounts, saying, "We had frozen that. Why would I freeze it again?" The judge then issued an order providing in part that "the court reiterates that any accounts at Republic Bank of Chicago in the names of the judgment debtors, Dentists, P.C., Perla Dental, and Dental Profile/Dental Profile, Ltd. and any accounts in the names of AYA Dental and AYA Dental, Ltd. are to be frozen."

In April 2011, Mendez's case was transferred from Judge Der-Yeghiayan to Judge Lefkow. After the transfer, Mendez moved the district court to hold Republic Bank liable for the release of the funds under the Illinois citation statute that permits a judgment creditor to recover the amount of the judgment from a party served with a motion to discover assets if that party improperly

releases the funds subject to that order. See 735 Ill. Comp. Stat. 5/2-1402(f)(1). Mendez argued that Republic Bank was liable for the full amount outstanding on her judgment because it had released funds exceeding that amount from the Dentists, P.C. and Dental Profile, Ltd. accounts without a court order. Republic Bank contended that the October 15 Order required it to unfreeze these accounts and that it would have risked liability to the account holders if it had failed to do so.

The motion was referred to Magistrate Judge Valdez, who issued a report and recommendation in favor of Republic Bank. See 28 U.S.C. § 636(b)(1). The magistrate judge reasoned that the plain language of the October 15 Order indicated that the AYA Dental and AYA Dental, Ltd. accounts were the only accounts at Republic Bank to remain frozen, and that Judge Der-Yeghiayan's later comments that the debtor-employers' accounts were supposed to have stayed frozen did not change the plain meaning of the October 15 Order. The magistrate judge concluded that because Republic complied with the order to unfreeze the funds, it did not violate the citation and should not be liable to Mendez.

Mendez objected to the recommendation, which required the district judge to review Mendez's motion *de novo*. Fed. R. Civ. P. 72(b). Initially Judge Lefkow reached the opposite conclusion, finding that Republic Bank violated the citation because Judge Der-Yeghiayan did not intend to unfreeze the Dentists, P.C. and Dental Profile, Ltd. accounts in the October 15 Order. In support of this conclusion, Judge Lefkow looked beyond the text

of the order and gleaned this intent from the October 15, 2010 and March 3, 2011 hearing transcripts. Notably, though, Judge Lefkow did not actually review Magistrate Judge Valdez's report and recommendation before ruling on the motion. Republic Bank filed a timely notice of appeal on April 3, 2012.

Three days later, Judge Lefkow concluded that she had made a mistake. She called the parties in for a status conference and told them that she had over-looked the magistrate judge's report and recommenda-tion when deciding Mendez's motion and, after reviewing the report, "realized that the decision was really not correct." To fix her mistake, she invited Republic Bank to file a Rule 60(b) motion for relief from judgment and indicated that she would grant the motion. Three days later Republic Bank moved to remand the appeal to the district court, and we remanded the appeal to the district court. See Fed. R. App. P. 12.1; Seventh Circ. R. 57. Republic Bank then filed its Rule 60(b) motion.

Judge Lefkow granted the Rule 60(b) motion and issued a new order on June 6, 2012. As an initial matter, Judge Lefkow found that her failure to review the magistrate judge's report and recommendation was an extraordinary circumstance that justified relief from judgment under Rule 60(b)(6). Then she concluded that the magistrate judge had recommended the correct result. Judge Lefkow reasoned that Judge Der-Yeghiayan's October 15 Order "at best, was ambiguous" and "cannot be said to have set forth an unambiguous command" for

Republic Bank to follow. Absent an explicit order that Republic Bank disobeyed, the court concluded that Republic Bank could not be liable to Mendez. Mendez now appeals this denial of her motion. The denial of Mendez's motion was a final resolution of the post-judgment dispute between Mendez and Republic Bank, so we have jurisdiction under 28 U.S.C. § 1291. We affirm.[2]

II. *Analysis*

Mendez raises three arguments on appeal. First, she argues that the district judge erred in granting relief under Rule 60(b) because there were no extraordinary circumstances justifying relief and Rule 60(b) may not be used to correct errors that may be corrected on appeal. Second, Mendez argues that the grant of relief deprived her of genuine *de novo* review of the magistrate judge's report and recommendation. Finally, Mendez argues on the merits that the court erred in concluding that Republic Bank was not liable for releasing the funds. We are sympathetic to Mendez's profound frustration, and we are deeply troubled that the judiciary's failure to issue a clear order reflecting its intent in this matter has hurt her chances of fully collecting her judgment against her former employer. Yet these arguments do not persuade us that Republic Bank is liable to

---

[2] The post-judgment citation proceedings to enforce the district court's judgment were within the district court's supplemental jurisdiction. See *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 724-25 (7th Cir. 2012).

Mendez. The bank followed the most reasonable inter-
pretation of the poorly drafted October 15 Order when
it unfroze the defendants' accounts. The bank therefore
did not violate the Illinois citation statute. We begin
with the Rule 60(b) and *de novo* review arguments,
and then turn to the merits of the dispute.


   A.  *Rule 60(b)*

   Federal Rule of Civil Procedure 60(b) allows a district
court to relieve a party from a final judgment or order
in six discrete circumstances, only two of which are
relevant to this case: "(1) mistake, inadvertence, surprise,
or excusable neglect" and "(6) any other reason that
justifies relief." Fed. R. Civ. P. 60(b).[3] To balance the

---

[3]  Rule 60(b) provides in full:

> (b) Grounds for Relief from a Final Judgment, Order, or
> Proceeding. On motion and just terms, the court may relieve
> a party or its legal representative from a final judgment,
> order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable dili-
> gence, could not have been discovered in time to move for
> a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged;
> it is based on an earlier judgment that has been reversed

(continued...)

availability of post-judgment relief with finality interests, the availability of Rule 60(b) relief is limited in several ways. First, relief under the subsection (6) catch-all category is limited to "extraordinary circumstances . . . ." See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988). Second, a motion for relief "must be made within a reasonable time" after entry of judgment, which the rule defines for subsections (1) through (3) as no later than one year after the entry of judgment. Fed. R. Civ. P. 60(c)(1); *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). (To prevent parties from using the subsection (6) catch-all to circumvent the one-year limit on relief under subsections (1) through (3), courts read the Rule 60(b) subsections to be "mutually exclusive," meaning if relief is available under a more specific subsection, it is not available under subsection (6). See *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 393 (1993).) And third, because the decision to grant relief from judgment is closely related to the circumstances of the judgment and the equities of a particular case, district courts are given broad discretion to deny motions for relief from judgment. Accordingly, we review the grant or denial of relief from judgment only for abuse of discretion. See *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("The

---

[3] (...continued)

or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

district court has great latitude in making a Rule 60(b) decision because that decision is discretion piled on discretion.") (quotations omitted); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

The district court awarded Republic Bank relief from judgment under subsection (6), reasoning that its failure to review the magistrate judge's report and recommendation prior to ruling on Mendez's motion, which led to its subsequent realization that it reached the wrong result, was "an unusual circumstance justifying relief." Mendez advances two arguments for finding that the district court erred on this point. First, she argues that the court's failure to review the magistrate judge's report and recommendation did not constitute an "exceptional circumstance" justifying relief under subsection (6). Second, she argues that Rule 60(b) relief is never appropriate to correct errors that may be corrected on appeal, as this error could have been. Although we agree with Mendez that this case does not fall within subsection (6), we conclude that the district court did not abuse its discretion because the district court could properly grant relief under subsection (1), even though the error was correctable on appeal.

We must first determine under which Rule 60(b) subsection this case is properly analyzed. The district judge cited subsection (6) as the basis for relief. Her reason for granting relief was that she had inadvertently overlooked the magistrate judge's report and recommendation and rendered an incorrect decision. This reason falls within the "mistake" and "inadvertence" language of

subsection (1), which includes inadvertence on the part of both courts and parties. See *Buggs v. Elgin, Joliet & E. Ry. Co.*, 852 F.2d 318, 322 (7th Cir. 1988); *Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1176 (7th Cir. 1983). Because the subsections of Rule 60(b) are not overlapping, the fact that this case is properly analyzed under subsection (1) means that the district court technically analyzed the case under the wrong subsection when it awarded relief under subsection (6). The district court's citation of a wrong subsection, however, does not merit reversal if relief is appropriate under another subsection. See *Disch v. Rasmussen*, 417 F.3d 769, 779 (7th Cir. 2005) (rejecting argument that district court abused discretion by referring to Rule 60(a) when case fell within Rule 60(b)(1)); *Wesco Products Co. v. Alloy Auto. Co.*, 880 F.2d 981, 984-85 (7th Cir. 1989) (recharacterizing motion for relief under Rule 60(b)(6) as a motion under Rule 60(b)(1)); see also *Boyd v. Illinois State Police*, 384 F.3d 888, 897 (7th Cir. 2004) (noting that appellate court may affirm on any ground in the record). Accordingly, we analyze the case under subsection (1).

This brings us to the heart of Mendez's second argument: whether Rule 60(b) relief may be granted to remedy errors that may be corrected on appeal. This problem arises most often when a district court denies relief and we affirm, finding no abuse of discretion in a refusal to reopen a closed judgment when the contested issue could have been pursued on appeal. Cases involving the grant of relief under Rule 60(b)(1) are much less common, and our prior cases have not always been clear

in describing when a district court may grant relief under subsection (1) to correct errors that might also be corrected on direct appeal. Compare *Buggs*, 852 F.2d at 322 (affirming grant of relief under Rule 60(b)(1) for reason that could have been subject of appeal), and *Bank of California*, 709 F.2d at 1176-77 (recognizing use of Rule 60(b)(1) to correct appealable errors made by district court), with *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002) (affirming district court's decision not to treat new complaint as Rule 60(b)(1) motion: "A contention that the judge erred with respect to the materials in the record is not within Rule 60(b)'s scope, else it would be impossible to enforce time limits for appeal."), and *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000) (affirming denial of Rule 60(b) motion filed after time to appeal had expired: "The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal.").

Our statements rejecting the use of Rule 60(b) to correct appealable errors have all been motivated by the concern that Rule 60(b) could be used to circumvent the deadlines for filing appeals. *E.g.*, *Gleash*, 308 F.3d at 761; *Bell*, 214 F.3d at 801 ("To allow a ground that can be adequately presented in a direct appeal to be made the basis of a collateral attack would open the door to untimely appeals, the spectre that this case illustrates."); *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) ("Rule 60(b), on the other hand, is not an appropriate vehicle for addressing simple legal error; otherwise, a party could circumvent the ordinary

time limitation for filing a notice of appeal."). Federal Rule of Appellate Procedure 4 establishes strict time limits for filing federal appeals. These limits may be extended only under circumstances set out in the rule. If parties or courts could use Rule 60(b) to revive cases in which a party failed to appeal within the standard deadline, Appellate Rule 4 would lose much of its force. That is why we have held in the cases cited above that Rule 60(b) relief is appropriately denied when a party fails to file a timely appeal and the relief sought could have been attained on appeal.

We have used overly broad language that may be read to foreclose Rule 60(b) relief for any error that could be corrected on appeal, but we have also affirmed the use of Rule 60(b) to correct errors that could have been corrected on appeal when the concern about circumventing the deadline to appeal is absent. We approved of this practice in *Buggs*, a case in which the district court failed to provide full relief to a plaintiff in a Title VII suit. That was an error that the plaintiff could have remedied on appeal. Yet after a notice of appeal was filed, we remanded the case to permit the district judge to correct the judgment under Rule 60(b). The defendant appealed, arguing that this was an inappropriate use of Rule 60(b). We concluded that the district court acted within its discretion. 852 F.2d at 324. Thus, while there is some superficial tension in our case law between *Buggs* and some of our more sweeping statements in cases like *Bell*, we agree with the significant majority of the circuits that subsection (1) of Rule 60(b) allows a district court to correct its own

errors that could be corrected on appeal, at least if the motion is not a device to avoid expired appellate time limits.[4] As Judge Friendly observed nearly fifty years ago,

---

[4] With only two exceptions, all of the circuits that have considered this question have concluded that Rule 60(b)(1) may appropriately be used to grant relief from judgment for legal errors that may be corrected on appeal. For cases in favor of Rule 60(b)(1) relief in such circumstances. See *In re 310 Associates*, 346 F.3d 31, 35 (2d Cir. 2003) ("In two early cases, this Court established a principle that Rule 60(b)(1) was available for a district court to correct legal errors by the court.*")* (citation omitted)*; United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (Rule 60(b)(1) relief available "when the judge has made a substantive mistake of law or fact in the final judgment or order"); *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 578 (10th Cir. 1996) ("The Tenth Circuit has made it clear that certain substantive mistakes in a district court's rulings may be challenged by a Rule 60(b)(1) motion."); *FDIC v. Castle*, 781 F.2d 1101, 1104 (5th Cir. 1986) ("The law of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law.") (citation omitted); *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 & n.5 (9th Cir. 1982) ("The law in this circuit is that errors of law are cognizable under Rule 60(b)."); *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 839-40 (11th Cir. 1982) (Rule 60(b)(1) "encompasses mistakes in the application of the law").

For a circuit opposed, see *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 189 (1st Cir. 2004) ("One might, and some courts do, think that Rule 60(b)(1)'s reference to 'mistake' as a grounds for relief from judgment includes this type of error of law. But this circuit decided that question the other way

(continued...)

"no good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial proceedings, when the trial court is equally able to correct its decision in the light of new authority on application made within the time permitted for appeal . . . ." *Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964) (citations omitted). Likewise in the rare case where a district judge recognizes a clear legal or factual error before a pending appeal has been briefed, no purpose is served by prohibiting the district judge from remedying the error. The parties in such cases, consistent with the goal of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive" resolution of disputes, may be spared the effort and expense of preparing an appeal and educating a new court on the particulars of their case. See Fed. R. Civ. P. 1; see also *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1574 (7th Cir. 1990) (en banc) (Manion, J., concurring) (noting that Rule 1 is a rule of construction for interpreting the Rules). Whether such an error may be remedied more efficiently through Rule 60(b) rather than the normal appellate process is a question appropriately left to the district court's discretion.

To be clear, this conclusion does not undermine our effort to prevent Rule 60(b) from being used to evade the deadline to file a timely appeal. This concern may be

---

(...continued)
in 1971."). The Third Circuit has taken a similar approach in a non-precedential order in 2005 that we refrain from citing.

adequately addressed through careful enforcement of the requirement that Rule 60(b) relief be sought within a "reasonable time . . . ." Fed. R. Civ. P. 60(c)(1). In the past we have suggested that the practice of requiring a Rule 60(b) motion to correct the court's own error to be filed before the time to appeal runs is a "sensible" one "provided that it is flexibly applied." See *Bank of California*, 709 F.2d at 1176-77. Given Federal Rule of Appellate Procedure 12.1 and our Circuit Rule 57 procedure that permit us to remand an appeal to the district court for purposes of granting relief from judgment under Rule 60(b), relief may also be timely sought after an appeal has been docketed without fear that the deadline to appeal is being circumvented. On the other hand, a Rule 60(b) motion filed after the time to appeal has run that seeks to remedy errors that are correctable on appeal will typically not be filed within a reasonable time.

Turning to the circumstances of this case, the district court's decision to grant Rule 60(b) relief was within its discretion to remedy its own mistake under subsection (1). The district court concluded that it had erred by overlooking the magistrate judge's report and recommendation and reached an incorrect result in deciding the motion. Moreover the district judge recognized that she was "sure to get reversed" on appeal and believed that it would be "better for the resolution of the dispute" to correct her judgment right away. This is a relatively unusual case. The court's decision to correct its oversight by vacating its order was an acceptable response to this situation within the bounds of Rule 60(b)(1), though it was by no means required to do so.

Republic Bank's motion for Rule 60(b) relief was also made within a reasonable time. The district court recognized its error only three days after Republic Bank filed its notice of appeal, and Republic Bank's Rule 60(b) motion followed three days later. The Rule 60(b) motion was filed more than 30 days after the district court entered judgment, but Republic Bank had already filed a timely notice of appeal. Therefore, neither Republic Bank nor the district court was trying an end run around the deadline for filing an appeal, and the parties were not operating under the assumption that the dispute had come to an end. The district court did not abuse its discretion by using Rule 60(b) to correct its own error.

B. *De Novo Review*

Mendez next argues that the district court's grant of Republic Bank's Rule 60(b) motion deprived her of truly *de novo* review of the magistrate judge's report and recommendation as required by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(3). See also *Kanter v. Comm'r of Internal Revenue*, 590 F.3d 410, 416-17 (7th Cir. 2009). The argument appears to be that because the district judge changed her mind after reviewing the report, she must have given the report some deference that is inconsistent with *de novo* review. We disagree. A judge may be persuaded by the argument in a magistrate judge's report without giving the report any improper deference.

Simply put, a party is not deprived of *de novo* review of a magistrate judge's report when the district judge is

persuaded by the magistrate judge's reasoning. "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendation." *United States v. Raddatz*, 447 U.S. 667, 676 (1980). Being persuaded by the magistrate judge's reasoning, even after reviewing the case independently, is perfectly consistent with *de novo* review. To illustrate the point, the federal courts of appeals conduct *de novo* review of a wide range of district court decisions. The fact that we read a district court's reasoning before making a decision is not thought to undermine the *de novo* character of that review.

*De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process. See *Raddatz*, 447 U.S. at 683 n.11 ("In original cases, as under the Federal Magistrates Act, the master's recommendations are advisory only, yet this Court regularly acts on the basis of the master's report and exceptions thereto."). The fact that the district judge was persuaded by the magistrate judge's report did not deprive Mendez of *de novo* review.

C.  *Republic Bank's Compliance with the Citation to Discover
    Assets*

We turn now to the merits: whether Republic Bank
complied with the citation to discover assets. The district
court concluded that Republic Bank was not liable to
Mendez, reasoning that a citation recipient could not
be liable under Illinois law unless its conduct was contu-
macious and concluding that Republic Bank did not
act contumaciously. On appeal Mendez argues that the
district court erred in requiring a finding of con-
tumacious conduct for liability, and that under a correct
interpretation of Illinois law, Republic Bank is liable
for violating the citation. We agree with Mendez that
the district court applied the wrong legal standard, and
we conclude that the interpretation of the October 15
Order presents a question of law rather than fact. Ac-
cordingly, we review *de novo* whether Republic Bank
unlawfully transferred the assets.[5] Because the plain text
of the October 15 Order unfroze the judgment debtors'
accounts in question, we conclude that Republic Bank
did not violate the citation and is not liable to Mendez.

Under Illinois law, a judgment creditor may try to
collect her judgment by serving a citation to discover
assets upon an individual or entity believed to possess

---

[5] The parties spent significant portions of their briefs
debating the best interpretation of the order. The issue has
been fully briefed and it is appropriate for us to resolve it
now rather than remanding the case to the district court and
further delaying resolution of this dispute.

assets of the judgment debtor. See Ill. Sup. Ct. R. 277(b); 735 Ill. Comp. Stat. 5/2-1402.[6] The citation to discover assets initiates a supplemental proceeding that permits the judgment creditor to determine whether the citation recipient has assets of the debtor. If the recipient is in possession of the debtor's funds, a court may order the turnover of the assets. 735 Ill. Comp. Stat. 5/2-1402(c).

To protect assets from improper transfers, Illinois permits judgment creditors to include restraining provisions in citations that prohibit the recipient from "making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom . . . until the further order of the court or the termination of the proceeding, whichever occurs first." 735 Ill. Comp. Stat. 5/2-1402(f)(1).

A citation recipient who fails to comply with the restraining provision may be liable to the judgment creditor for any transferred funds that belonged to the judgment debtor. Contrary to the view of the district court, no showing of contempt is required to impose liability on the citation recipient. *Bank of Aspen v. Fox Cartage, Inc.*, 533 N.E.2d 1080, 1086 (Ill. 1989). The statute provides that the court:

---

[6] Post-judgment proceedings to collect a judgment are governed by the law of the state in which the federal court issuing the judgment is located. Fed. R. Civ. P. 69(a)(1). Mendez won her judgment in the Northern District of Illinois, so the Illinois procedures govern this supplemental proceeding. See *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188 (7th Cir. 2011).

may punish any party who violates the restraining provision of a citation as and for a contempt, *or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment* and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.

735 Ill. Comp. Stat. 5/2-1402(f)(1) (emphasis added).

The Illinois Supreme Court has interpreted this language to permit a court to hold a third-party citation respondent liable for any transfer in violation of the citation. The court may also impose contempt sanctions on a respondent who "willfully or contumaciously" violated the citation. See *Bank of Aspen*, 533 N.E.2d at 1086. To recover from Republic Bank, Mendez must show only (1) that she has an enforceable judgment, (2) that she properly served a citation upon the bank, and (3) that the bank transferred assets of the judgment debtor in violation of the citation's restraining provision. See *In re Weitzman*, 381 B.R. 874, 882 (Bankr. N.D. Ill. 2008). Only the third element is disputed.

Republic Bank permitted the judgment debtors to transfer money out of their accounts after Mendez served the citation on the bank. The bank — which was not a party to the proceedings surrounding the October 15 Order — maintains that the transfers were lawful because the district court's order required it to unfreeze the accounts in question. Because the citation's restraining provision can be terminated by a court order, the bank did not violate the restraining provision if the October 15

Order authorized it to release the funds. We agree with Republic Bank that the order is best read as requiring it to release the funds, even if that is not what the district judge author intended.

At the outset we must determine the proper scope of our inquiry into the meaning of the order. Mendez argues that we should read the order in light of the motion to quash, the October 15 hearing transcript, and the March 3, 2011 hearing transcript. These materials make clear that Judge Der-Yeghiayan did not intend his October 15 Order to unfreeze the Dentists, P.C. and Dental Profile, Ltd accounts, as Judge Lefkow found in her original decision. We believe the proper inquiry, however, should not extend beyond the text of the court's order. It is not reasonable to expect a third-party citation respondent to investigate the intended meaning of a court order beyond the text of the order itself. A respondent may be expected to comply with only the most reasonable reading of a court order unfreezing assets. The respondent will ordinarily be a stranger to the underlying dispute and often, as in this case, has no obligation to spend time and money to participate in court proceedings on whether to unfreeze the debtor's assets. In such cases, the respondent will simply be presented with a copy of the resulting court order and a demand by an account holder to release the accounts.

Citation respondents — many of whom deal with numerous citations per year — need not investigate the docket of a case (at their own expense) before releasing the funds. If we were to obligate respondents to search

the record, how far would they have to read to be sure they had interpreted the order properly, lest they risk strict liability? All of the pleadings? The hearing transcript? If there is no transcript, must a respondent pay to have one prepared? Quickly? To ask these questions is to answer them. All we can reasonably expect of third-party citation respondents is that they follow the most reasonable interpretation of a court's order. For the same reason, our own inquiry should not extend beyond the text of the order in question.

Turning to the October 15 Order, we agree with Republic Bank that the most reasonable reading is that the order unfroze all of the accounts included in the citation to discover assets held by Republic Bank except for the accounts specifically excepted in the order. The order began: "The Court hereby orders that, until further order of this Court, *the only accounts that are to remain frozen pursuant to the citation* issued by Plaintiff Nereida Mendez against Defendants . . . are as follows . . . ." (Emphasis added.) The order then referred to three accounts at MB Financial Bank that were to remain frozen and two accounts at Republic Bank that were to remain frozen. Given the first sentence of the order and the reference in the order to specific accounts that were to remain frozen, the text of the order clearly indicated that all accounts not mentioned were to be unfrozen. Consistent with the first sentence, the order concluded: "Emergency motion to quash citations *as to all other accounts* at MB Financial Bank and Republic Bank of Chicago *that are not identified* above [312] is granted." (Emphasis added.) Presented with this order, Republic Bank drew the most

obvious conclusion: all accounts frozen pursuant to Mendez's citation except those specifically listed were to be unfrozen. Because the order did not mention the Dentists, P.C. and Dental Profile, Ltd. accounts at Republic Bank, they were to be unfrozen.

Mendez argues that it is unreasonable to read the order to include the Dentists, P.C. and Dental Profile, Ltd. accounts because these accounts were not at issue in the motion to quash the citation. She argues that the reference to the docket number of the motion decided by the order — "[312]" — incorporated the motion by reference into the order. According to Mendez, when the motion to quash is read with the court order, the "not identified above" language in the phrase "emergency motion to quash citations as to all other accounts . . . not identified above [312] is granted" implicitly limits the broad language about unfrozen accounts to those mentioned in the motion to quash itself. Based on this interpretation, the sentence from the order could be rewritten as "Emergency motion to quash citations as to all other accounts [*listed in the motion to quash citations*] at MB Financial Bank and Republic Bank of Chicago that are not identified above [312] is granted." (Added text in italics.)

We reject this theory, under which the obscure reference (imagine a layperson trying to decipher "[312]") to the motion to quash meant that the bank was required to figure out that the order did not actually mean what its plain language indicated. The order's obscure reference to the docket number of the motion

cannot fairly be read to require a bystander like the bank to figure out that the district judge had used language much broader than his intended meaning. The breadth of that language, which was not recognized by Mendez's counsel or anyone else when there was still time to avoid the problem, was the source of the dispute.[7]

Because the most reasonable reading of the October 15 Order unfroze the Dentists, P.C. and Dental Profile, Ltd.

---

[7] Even if we were to read the order in conjunction with the motion, we would not reach a different result. A critical problem with Mendez's argument is that the October 15 Order specifically referred to accounts that had not been the subject of the motion to quash. The court's order provided that "the two Dental Profile Ltd accounts that each contain a balance of $0.00 at MB Financial Bank" were to "remain frozen pursuant to the citation . . . ." These accounts were not included in the motion to quash, yet Judge Der-Yeghiayan included them in the order as accounts that were to remain frozen. In fact, these accounts had the same name as one of the accounts that Mendez claims Republic Bank wrongfully unfroze. Because the Dental Profile Ltd. account at MB Financial Bank was explicitly mentioned in the order while the Dental Profile Ltd. account at Republic Bank was not, the failure to mention the Dental Profile Ltd. account at Republic Bank implied that the account was not to remain frozen. Mendez's theory that the order dealt only with accounts that were the subject of the motion to quash cannot make sense of the order's reference to accounts that were not at issue in the motion. Thus, even if Republic Bank had read the October 15 Order in conjunction with the motion to quash, the most reasonable reading of the order would still have been that the accounts not mentioned in the motion were to be unfrozen.

accounts at Republic Bank, Republic Bank did not violate the citation statute. Accordingly, we AFFIRM the district court's denial of Mendez's motion to hold Republic Bank liable for the unpaid portion of the judgment in her favor.